IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CAPITOL SPECIALTY INSURANCE
CORPORATION,

    Plaintiff,

    v.

    CIVIL ACTION FILE
    NO. 1:17-CV-1112-TWT

PTAV, INC., et al.,

    Defendants.

## OPINION AND ORDER

This is a declaratory judgment action regarding an insurer's duty to defend and indemnify. It is before the Court on the Defendant Capitol Specialty Insurance Corp.'s Motion for Summary Judgment [Doc. 34], and the Defendant RJV Corp.'s Motion to Join Co-Defendants' Opposition Brief [Doc. 37] and for Summary Judgment as to RJV's Cross Claim [Doc. 38]. For the following reasons, Capitol's Motion for Summary Judgment [Doc. 34] is GRANTED, RJV's Motion to Join Co-Defendants' Opposition Brief [Doc. 37] is GRANTED, and RJV's Motion for Summary Judgment [Doc. 38] is GRANTED in part and DENIED in part.

# I. Background

On April 4, 2015, the Defendant P.M. was drugged and abducted by four men from a parking lot outside of the businesses known as Red Martini, Moondogs, and Hole in the Wall.[1] These four men were joined by a fifth man who led them to an apartment located in College Park, Georgia.[2] Upon arriving at the apartment, three of the men dragged P.M. from the car into the apartment, where she was sexually assaulted and raped by multiple individuals.[3] During the assault and rape, many of P.M.'s effects were stolen from her. For example, two of the individuals took her credit card and used it to purchase food and condoms at a separate location.[4] P.M. also realized at one point during the ordeal that her diamond wedding ring, cell phone, purse, shoes, and other elements of her clothing were missing.[5] When P.M. asked for her things back, the men refused.[6]

---

[1]     Capitol's Statement of Undisputed Material Facts ¶ 4 (hereinafter "Capitol's SMF").

[2]     Defs. P.M. and D.M.'s Statement of Additional Undisputed Material Facts ¶ 3 (hereinafter "P.M. and D.M.'s SAMF").

[3]     *Id.* at ¶ 4.

[4]     *Id.* at ¶ 5.

[5]     *Id.* at ¶ 6.

[6]     *Id.*

Eventually, the men did agree to take her home, but only if the men drove her and if she agreed to pay them $10,000 in cash.[7] P.M. agreed to do so, and along the drive back to her home, the men continued to assault P.M.[8] Upon arriving at her home in Marietta, Georgia, where she lived with her husband, D.M., and their two children, P.M. managed to get inside, lock the door, and call the police.[9] Eventually the men were all arrested, and have since been charged with various crimes including rape, kidnapping, false imprisonment, and theft.[10]

This declaratory judgment action grows out of a tort case P.M. and her husband D.M. subsequently filed against the property and business owners of the three businesses located around the parking lot where she was abducted. Among these defendants were PTAV, which owns and operates the restaurant Red Martini, and RJV, which owns the property.

In 2003, RJV leased the property located at 3179 Peachtree Road to Peachtree Tavern, Inc.[11] Ten years later, on September 30, 2013, RJV, Peachtree Tavern, Inc., and PTAV agreed to assign the Lease to PTAV, and PTAV agreed to comply with and be bound by all provisions of the Lease.[12] Paragraph 9 of the

---

[7]     *Id.* at ¶ 8.

[8]     *Id.* at ¶ 9.

[9]     *Id.* at ¶ 10.

[10]    *Id.* at ¶ 12.

[11]    RJV's SMF ¶ 1.

[12]    *Id.* at ¶¶ 2-3.

Lease requires PTAV to indemnify and defend RJV in certain situations, and also requires PTAV to maintain a general liability insurance policy with RJV as an additional insured.[13] PTAV purchased such a policy from Capitol.

After P.M. and D.M. filed their tort suit in Georgia state court, Capitol filed this action on March 28, 2017, seeking a declaratory judgment stating that it has no duty to defend or indemnify PTAV or RJV in the underlying suit. PTAV did not answer the Complaint, and the Clerk entered a default. Meanwhile, RJV did answer the Complaint, and also filed a crossclaim against PTAV, seeking a declaratory judgment that PTAV owes a duty to defend or indemnify RJV in the underlying suit. Capitol and RJV now move separately for summary judgment.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[14] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[15] The party seeking summary judgment must first identify grounds to show the absence of a genuine issue of material fact.[16] The burden then shifts to the nonmovant, who must go beyond the

---

[13]     *Id.* at ¶¶ 4-5.

[14]     FED. R. CIV. P. 56(a).

[15]     *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).

[16]     *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.[17] "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."

## III. Discussion

### A.      Capitol's Motion for Summary Judgment

Capitol seeks a declaration from this Court that it has no duty to defend or indemnify RJV in the underlying lawsuit because P.M. and D.M.'s allegations against RJV are explicitly excluded under the policy.[18] Under Georgia law, the duty to defend and the duty to indemnify are treated separately. "[A]n insurer need not indemnify an insured for a liability the insured incurs outside the terms of the insurance contract."[19] Given that a determination of liability is central to this question, federal courts often find that "an insurer's duty to indemnify is not ripe for adjudication in a declaratory judgment action until the insured is in fact held liable in the underlying suit."[20] However, the duty to

---

[17]      *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

[18]      Capitol also seeks a declaration against PTAV. Because PTAV never answered the Complaint, the Court grants Capitol's Motion for a Default Judgment against PTAV.

[19]      *Elan Pharm. Research Corp. v. Emp'rs Ins. of Wausau*, 144 F.3d 1372, 1375 (11th Cir.1998).

[20]      *Atl. Cas. Ins. Co. v. GMC Concrete Co.*, No. CIV.A. 07-0563WSB, 2007 WL 4335499, at *5 (S.D. Ala. Dec. 7, 2007) (quotations omitted). *See also Nationwide Mut. Fire Ins. Co. v. Dillard House, Inc.*, 651 F. Supp. 2d 1367, 1372-74 (N.D. Ga. 2009) (collecting cases).

indemnify may be ripe for adjudication where a court finds no duty to defend, and "logic and common sense" make clear that the duty to indemnify would be governed by the same facts and contractual provisions.[21]

"An insurer's duty to defend," meanwhile, "is broader than its duty to indemnify." [22] Under Georgia law, "an insurer must provide a defense against any complaint that, if successful, might *potentially or arguably* fall within the policy's coverage."[23] "Therefore, even if some of the allegations ultimately are not found to be covered by the policy, the insurer still has a duty to defend the entire action if any of the claims *might* be."[24] This means that "where an insurer has a duty to defend a single claim the complaint presents, it has a duty to defend all the claims asserted."[25]

Generally speaking, an insurer's duty to defend is determined by "compar[ing] the allegations of the underlying complaint against the provisions of the policy," and an insurer "can rely solely on the allegations contained within

---

[21] *Western Heritage Ins. Co. v. River Entertainment*, 998 F.2d 311, 315 (5th Cir. 1993).

[22] *Shafe v. Am. States Ins. Co.*, 288 Ga. App. 315, 317 (2007).

[23] *Elan Pharm.*, 144 F.3d at 1375 (emphasis added).

[24] *Travelers Property Cas. Co. of America v. Kansas City Landsmen, L.L.C.*, 592 Fed. Appx. 876, 882 (11th Cir. 2015) (quotations omitted) (emphasis added).

[25] *HDI-Gerling Am. Ins. Co. v. Morrison Homes, Inc.* 701 F.3d 662, 666 (11th Cir. 2012) (applying Georgia law).

the complaint to establish that a policy exclusion precludes coverage."[26] However, if the insurer is aware of "factual contentions that would place the claim within the policy coverage," courts may consider such "true facts" outside of the four corners of the complaint in determining whether an insurer has a duty to defend.[27] "If the complaint," including facts outside of the complaint that are known to the insurer, "does not assert a claim that is covered, the insurer is justified in refusing to provide the insured a defense. Any doubt as to the insurer's duty to defend, though, should be resolved in favor of the insured."[28] "This principle is especially true with respect to exclusions from coverage sought to be invoked by the insurer."[29]

Under the policy at issue in this case, Capitol agreed to cover PTAV for its liability for "damages because of 'bodily injury' . . . [and] 'personal and advertising injury.'"[30] The policy also contained an "Assault or Battery Exclusion," which states in pertinent part:

> This insurance does not apply to, nor shall [Capitol] have a duty to defend, any claim or "suit" seeking damages or expenses due to "bodily injury," . . . [or] "personal and advertising injury" . . . arising out of, resulting from, or in connection with any of the

---

[26]    *Travelers*, 592 Fed. Appx. at 882.

[27]    *Colonial Oil Indus. Inc. v. Underwriters Subscribing to Policy Nos. TO31504670 & TO31504671*, 268 Ga. 561, 562 (1997).

[28]    *Morrison Homes*, 701 F.3d at 666 (citations omitted).

[29]    *Dillard House*, 651 F. Supp. 2d at 1376.

[30]    Capitol's SMF ¶¶ 21-22.

following acts or omissions regardless of their sequence or any concurring causes:

a. "Assault or battery", whether or not caused or committed by or at the instruction of, or at the direction of or arising out of the negligence of [Ptav], any insured, any person or legal entity, or any causes whatsoever;

b. The suppression or prevention of, or the failure to suppress or prevent "assault or battery" by [Ptav], any insured, or any person or legal entity;

c. The failure by [Ptav], any insured, or any legal entity to provide an environment safe from "assault or battery", including but not limited to the failure to provide adequate security, or the failure to warn of the dangers of the environment which could contribute to "assault or battery" or failure to maintain the premises by [Ptav], any insured or any person or legal entity;

d. The negligent employment, investigation, hiring, supervision, training, retention, or any other employment related practice by any insured or any person or legal entity, including but not limited to contractors or subcontractors;

. . . .

g. The reporting to the proper authorities or failure to do so by [Ptav], any insured, or any person or legal entity;

. . . .[31]

The policy defines "Assault or battery" to mean:

a. Assault, including sexual abuse, sexual assault, intimidation, sexual harassment, verbal abuse, and any threatened harmful or offensive contact between two or more persons, whether or not caused or committed by or at the instruction of, or at the direction of, or arising out of the negligence of [Ptav], any insured, any legal entity, or any causes whatsoever, regardless of fault or intent; and

_____

[31]    *Id.* at ¶ 23.

b. Battery, including sexual abuse, sexual battery, sexual molesta-tion, any physical alteration and any actual harmful or offensive contact between two or more persons, whether or not caused or committed by or at the instructions of, or at the direction of, or arising out of the negligence of, [Ptav], any insured, any legal entity, or any causes whatsoever, regardless of fault or intent.[32]

Lastly, the policy also excludes punitive, exemplary, or statutory damages, along with fines, fees or penalties.[33]

P.M. and D.M.'s allegations in the underlying complaint fall squarely within these exclusions. The underlying complaint asserts five causes of action against RJV and PTAV: (1) negligence; (2) nuisance; (3) loss of consortium; (4) punitive damages; and (5) expenses of litigation.[34] The punitive damages claim is expressly excluded under the policy,[35] and the other claims all involve the same common set of facts, beginning with P.M.'s abduction and sexual assault. Thus, all of the claims arise out of, result from, or are *in connection with* an assault or battery, and are therefore excluded under the policy as well.

P.M. and D.M., however, argue that the "arise out of" language in the exclusion should be interpreted narrowly. In the context of exclusions, Georgia courts generally "interpreted the phrase 'arising out of' more narrowly, applying

---

[32]    *Id.* at ¶ 24.

[33]    *Id.* at ¶ 25.

[34]    *Id.* at ¶ 6.

[35]    *Id.*

the 'but for' test traditionally used to determine cause-in-fact for tort claims."[36] Because their other claims and injuries do not arise solely from an assault or battery, P.M. and D.M. argue that they should not be excluded under the policy.

But this argument is flawed for two reasons. First, the three cases they cite in support of this interpretation are easily distinguishable from the case at hand. All three cases involve policy exclusions which are much more narrow than the policy exclusion in this case. In *Barrett v. National Union Fire Ins.*, the policy stated that it would not apply to "any liability *arising out of* the actual or threatened discharge . . . of Pollutants anywhere in the world."[37] In *Eady v. Capitol Indem. Corp.*, the policy exclusion stated that it did not apply to "bodily injury, property damage or personal injury *arising out of* assault, battery, or assault and battery."[38] And in *Cotton States Mut. Ins. Co. v. Crosby*, the policy excluded "any damages, direct or consequential, arising from bodily injury . . . of any person."[39]

All of the exclusions in these cases only included the phrase "arising out of." By contrast, the exclusion in this case is much more broad, excluding any

---

[36]      *Barrett v. National Union Fire Ins. Co. of Pittsburgh*, 304 Ga. App. 314, 321 (2010).

[37]      *Id.* at 317 (emphasis added).

[38]      *Eady v. Capitol Indem. Corp.*, 232 Ga. App. 711, 712 (1998) (emphasis added).

[39]      *Cotton States Mut. Ins. Co. v. Crosby*, 244 Ga. 456 (1979) (emphasis added).

injuries "arising out of, resulting from, or *in connection with*" an assault or battery.[40] The clear import of such broad language indicates that the parties intended to exclude from coverage bodily injuries in any way related to or caused by that conduct defined as an assault or battery. In this case, all of P.M. and D.M.'s injuries are clearly substantially related to P.M.'s sexual assault and abduction. All of the other crimes ultimately stem from the "assault and battery" that was her abduction.

Second, even if the Court were to adopt the narrow interpretation put forth in cases like *Barrett*, the claims against RJV and PTAV would still be excluded under the policy. In their response brief, P.M. and D.M. argue that their claims should not be excluded because they do not "arise *solely* from an assault or battery."[41] But P.M. and D.M. confuse sole causation with but-for causation. But-for causation merely asks whether a claim would exist "but for" that conduct,[42] and Georgia courts have been clear that the but-for test applies to the phrase "arises out of" when it is contained in exclusionary clauses.[43] Here, none of the P.M.'s injuries would have occurred but for her abduction and sexual

---

[40]    Capitol's SMF ¶ 23 (emphasis added).

[41]    Defs. P.M. and D.M.'s Resp. to RJV's Mot. for Summ. J., at 11 (emphasis added).

[42]    *Eady*, 232 Ga. App. at 713.

[43]    *See id.*; *Georgia Interlocal Risk Mgmt. Agency v. City of Sandy Springs*, 337 Ga. App. 340, 343 (2016), reconsideration denied (June 9, 2016), cert. denied (Feb. 6, 2017); *Barrett*, 304 Ga. App. at 321.

assault, including the theft of her property and her wrongful imprisonment. Thus, the claims are excluded even under a narrow reading of the policy.

Because P.M. and D.M.'s claims both arise from and are connected with an assault and battery, namely P.M.'s abduction and sexual assault, the claims are excluded under the policy and Capitol has no duty to defend RJV in the underlying litigation. It also follows logically that, because the claims are excluded, there is no situation under which Capitol would be required to indemnify RJV. Therefore, the Court finds that Capitol is also entitled to summary judgment on its declaratory claims against RJV.

## B. RJV's Motion for Summary Judgment on its Crossclaim

Separately, RJV moves for summary judgment on its crossclaim against PTAV. In its answer and crossclaim, RJV seeks a declaration that PTAV owes a duty to defend and indemnify RJV in the underlying litigation based on certain provisions of the Lease Agreement between them. "As a general rule a party may contract away liability to the other party for the consequences of his own negligence without contravening public policy . . . except when such an agreement is prohibited by statute . . . ."[44] Leases are no exception to this general rule.[45]

---

[44]     *Lanier At McEver, L.P. v. Planners and Engineers Collaborative, Inc.*, 284 Ga. 204, 205 (2008).

[45]     *See World Championship Wrestling, Inc. v. City of Macon*, 229 Ga. App. 248, 249 (1997) (finding lease indemnification provision valid). Such provisions do violate public policy if they go so far as to shift liability to the

Paragraph 9 of the Lease Agreement between RJV and PTAV requires

PTAV to defend and indemnify RJV in certain situations, stating in relevant

part:

> Lessee shall indemnify and hold harmless Lessor from and against any and all losses, damages, liabilities and claims occasioned by, and arising or resulting from or growing out of Lessee's use of the premises, or from the conduct of Lessee's business, or from any activity, work or things done, permitted or suffered by the lessee in or about the leased premises . . . . In case of any action or proceeding be brought against Lessor by reason of any such claim, Lessee, upon notice from Lessor, shall defend the same at Lessee's expense by counsel satisfactory to Lessor.

> Lessee agrees that Lessee, as material part of the consideration to Lessor, assumes all risk of damage to property or injury to persons, in or about the Premises and that the Lessor shall not be liable for injury to . . . invitees, or customers . . . .[46]

The unambiguous language of the Lease Agreement makes clear that

PTAV has a duty to defend RJV for any injuries "arising or resulting from or

growing out of Lessee's use of the premises . . . ." This is similar to an insurance

contract, as it allocates risk among the parties for consideration. But unlike the

exclusionary provision in the Capitol policy, this is more akin to a coverage

provision, in which PTAV is agreeing to cover the costs of certain types of

liabilities.

---

Lessee for the Lessor's sole negligence. *See* O.C.G.A. § 13-8-2(b). However, this policy is irrelevant in this case because the Lease Agreement in this case specifically states that the Lessee does *not* agree to indemnify for the Lessor's sole negligence.

[46]    RJV's SMF ¶ 4.

Georgia courts read the phrase "arising out of" much more broadly with regard to coverage provisions than exclusionary provisions.[47] In the coverage context, the phrase "'arising out of' does not mean proximate cause in the strict legal sense, nor [does it] require a finding that the injury was directly and proximately caused by" the PTAV's use of the premises.[48] Rather, "[a]lmost any causal connection or relationship will do."[49] The question in this particular situation, therefore, is whether P.M.'s abduction has any causal connection or relationship with PTAV's use of the premises.

The facts of this case make clear that P.M.'s claims do arise out of PTAV's operation of Red Martini as a nightclub and restaurant. P.M. was a patron of Red Martini immediately prior to her abduction, she was drugged prior to her abduction, and she was abducted in the parking lot immediately adjacent to Red Martini.[50] Had Red Martini not been operating, P.M. likely would not have been on the property, she would not have been drugged, and she would not have been abducted. Thus, there is at least some causal relationship between P.M. and D.M.'s injuries and PTAV's operation of Red Martini, triggering PTAV's duty to defend RJV.

---

[47]   *See Barrett*, 304 Ga. App. at 321-22.

[48]   *BBL-McCarthy, LLC v. Baldwin Paving Co.,* 285 Ga. App. 494, 498 (2007).

[49]   *Id.*

[50]   P.M. and D.M.'s SAMF ¶ 3; RJV's Reply to Mot. for Summ. J., Ex. A, ¶ 22 [Doc. 45-1].

As to its duty to indemnify RJV, however, it is too soon to say. While PTAV agreed to generally indemnify RJV, the Lease Agreement also states that PTAV will not indemnify RJV for any injuries which are "solely caused by the willful misconduct of" RJV.[51] As discussed above, "an insurer's duty to indemnify is not ripe for adjudication in a declaratory judgment action until the insured is in fact held liable in the underlying suit."[52] This is especially true in a case such as this where indemnification turns on the apportionment of blame. Even assuming that there is liability, the Court cannot determine whether or not RJV is solely responsible without a final decision in the underlying lawsuit. Therefore, because the issue of liability has not yet been decided, the Lease Agreement's indemnification provision is not ripe for adjudication.

## IV. Conclusion

For the reasons stated above, Capitol's Motion for Summary Judgment [Doc. 34] is GRANTED, RJV's Motion to Join Co-Defendants' Opposition Brief [Doc. 37] is GRANTED, and RJV's Motion for Summary Judgment [Doc. 38] is GRANTED in part and DENIED in part. The remainder of this case regarding PTAV's duty to indemnify RJV is hereby DISMISSED WITHOUT PREJUDICE as premature.

---

[51]    RJV's SMF ¶ 6.

[52]    *Atl. Cas. Ins. Co. v. GMC Concrete Co.*, No. CIV.A. 07-0563WSB, 2007 WL 4335499, at *5 (S.D. Ala. Dec. 7, 2007) (quotations omitted). *See also Nationwide Mut. Fire Ins. Co. v. Dillard House, Inc.*, 651 F. Supp. 2d 1367, 1372-74 (N.D. Ga. 2009) (collecting cases).

SO ORDERED, this 6 day of August, 2018.


                              /s/Thomas W. Thrash
                              THOMAS W. THRASH, JR.
                              United States District Judge